UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PI&I MOTOR EXPRESS, INC., et al., | ) | CASE NO. 4:19CV1008 |
| | ) | |
| Plaintiffs, | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | |
| RLI INSURANCE COMPANY, et al., | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| Defendant. | ) | |

This matter is before the Court on a motion for judgment on the pleadings filed by Defendant RLI Insurance Company ("RLI") on July 8, 2019. ECF Dkt. #13. Plaintiffs PI&I Motor Express, Inc., Elite Leasing, Inc., Joseph Kerola, Sr., Pamela Kerola, and JWK Bros., Inc. (collectively "Plaintiffs") filed an opposition brief on August 6, 2019. ECF Dkt. #18. Both parties filed subsequent reply briefs. ECF Dkt. #s 19, 21, 27. For the following reasons, the Court DENIES Defendant RLI's motion for judgment on the pleadings (ECF Dkt. #13), GRANTS Plaintiffs' motion to amend to add a reformation claim, and DENIES Plaintiffs' alternative request to convert the instant motion into one for summary judgment (ECF Dkt. #18).

## I.      FACTUAL AND PROCEDURAL HISTORY

This case concerns insurance coverage for an underlying personal injury lawsuit ("Underlying Lawsuit") in Allegheny County, Pennsylvania, in which Plaintiffs were named as defendants. In the Underlying Lawsuit, plaintiff Ryan Marshall, Sr. ("Marshall") sought to recover damages for personal injuries he sustained when a pipe that was being loaded onto a truck fell and crushed his legs. The injuries were so severe that Marshall's legs required amputation. *See* ECF Dkt. #13 at 2, #18 at 9.

Plaintiffs, in the instant case, seek defense and indemnity for the Underlying Lawsuit under a policy of commercial general liability insurance that RLI issued to Plaintiff PI&I Motor Express, Inc. ("Motor Express"). RLI defended Plaintiffs in the Underlying Lawsuit under a reservation of rights, and the Underlying Lawsuit has since been settled. ECF Dkt. #13 at 2; #18 at 15; #23.

### A.    Parties and Factual Background

Plaintiff Motor Express is a registered Ohio for-profit corporation that operates a full-service truck and motor carrier business throughout the United States. ECF Dkt. #1-1 at ¶¶3, 16; #13 at 2; #18 at 10. Plaintiffs Elite Leasing, Inc. ("Elite") and JWK Bros., Inc. ("JWK") are Ohio corporations, and are affiliates of Motor Express. ECF Dkt. #1-1 at ¶¶ 4-5; #13 at 2. Plaintiff Joseph Kerola, Sr. is president of Motor Express, general manager of Elite, and president of JWK, and Plaintiff Pamela Kerola is Joseph Kerola's wife. ECF Dkt. #1-1 at ¶¶6-7; #13 at 2.

Dura-Bond Industries ("Dura-Bond") manufactures and stores large industrial pipes at its facility in Duquesne, Pennsylvania, and it outsources its on-site hauling needs, which fluctuates daily. ECF Dkt. #18 at 10 (citing ECF Dkt. #4-2 at 13, 23). Plaintiffs clarified that Dura-Bond typically used Robert Wallace for its on-site hauling needs. ECF Dkt. #18 at 10 (citing ECF Dkt. #4-2 at 12-14); *see* ECF Dkt. #4-2 at 8. Around 2007, Wallace entered into an independent contract agreement with Motor Express and began to run his trucks under Motor Express' operating authority. ECF Dkt. #18 at 10 (citing ECF Dkt. #4-3 at 22). Trucks operating under Motor Express' operating authority are driven by independent contractor drivers, drivers of the trucking companies, or drivers provided by professional-employer organizations. ECF Dkt. #18 at 10 (citing ECF Dkt. #1-1 at 6 ¶18). Pursuant to its federal and state regulatory requirements, Motor Express must screen and approve drivers and provide certain safety information and instruction for trucks to be driven under its operating authority. Drivers must also sign an independent contractor agreement which requires drivers to provide their own insurance.  ECF Dkt. #18 at 10 (citing ECF Dkt. #1-1 at 6 ¶19; #4-2 at 8-9).

Dura-Bond hired Motor Express to move freight around its facility using trucks bearing the Motor Express placard and operating under Motor Express' Federal Motor Carrier operating authority. ECF Dkt. #1-1 at ¶ 21; #13 at 3; #18 at 10. Dura-Bond worked directly with Wallace on its daily hauling needs. ECF Dkt. # 18 at 10 (citing ECF Dkt. #4-2 at 12; #4-3 at 23). At times, Wallace did not have sufficient drivers to handle Dura-Bond's workload. In such a case, Wallace would bring in a third party for drivers, including Sam Russell Trucking ("Russell Trucking"). *Id.*

(citing ECF Dkt. #4-2 at 11; #4-3 at 25). Russell Trucking also had an independent contracting agreement with Motor Express to operate its trucks under Motor Express' operating authority. *Id.* at 11 (citing ECF Dkt. #1-1 at 6 ¶22). Under this arrangement, among other things, Motor Express leased trucks from Russell Trucking to perform the work required by Dura-Bond at its facility. ECF Dkt. #13 at 3 (citing ECF Dkt. #1-1 at 6 ¶22). Motor Express received weekly logs, invoiced Dura-Bond, and then paid Wallace (or third parties such as Russell Trucking) a percentage of the sum received from Dura-Bond. *Id.* (citing ECF Dkt. #4-2 at 13).

Ryan Marshall (the underlying plaintiff) was a former Dura-Bond employee, and applied with Russell Trucking to drive its trucks as an independent contractor. ECF Dkt. 13 at 3; #18 at 11; #1-1 at 7 ¶23. Motor Express screened Marshall and approved him as a driver with Russell Trucking for purposes of the work at Dura-Bond, subject to training by Russell Trucking. ECF Dkt. 13 at 3 (citing ECF Dkt. #1-1 at 7 ¶23); #18 at 11. Marshall signed a Driver Lease Agreement with Russell Trucking wherein Marshall noted that he was an independent contractor who was leasing one of Russell trucking's trucks and that he was responsible for securing his own workers compensation coverage. ECF Dkt. #18 at 11 (citing ECF Dkt. #1-1 at 7 ¶24). On or about May 27, 2014, Marshall began driving Russell Trucking's trucks under Motor Express' operating authority. ECF Dkt. #18 at 11 (citing ECF Dkt. #1-1 at 7 ¶¶23-26; #4-2 at 4, 6).

After his training was completed, Marshall's assigned job at the Dura-Bond facility was to drive truckloads of Dura-Bond pipe across the facility grounds. ECF Dkt. #13 at 3; 18 at 11 (both citing ECF Dkt. #1-1 at ¶ 26). Marshall received his assignments and pay from Russell Trucking, and on-site Dura-Bond personnel[1] instructed Marshall where to transport the loads. Motor Express was not involved in these daily operations and did not pay Marshall. ECF Dkt. #18 at 11 (citing ECF Dkt. #1-1 at ¶ 26; #4-3 at 16).

On June 27, 2014, while working at the Dura-Bond facility, Marshall sustained injuries that permanently disabled him. ECF Dkt. #13 at 3; #18 at 11. Marshall was standing outside his truck

---

[1]The ALJ's opinion in the workers' compensation proceeding noted that Marshall was given daily direction by a Mr. McFarland, a worker whom Marshall thought was an employee of Dura-Bond but whom was actually a worker of Wallace Trucking. ECF Dkt. #4-2 at 5.

while Dura-Bond personnel loaded pipe onto the truck with a forklift. When a Dura-Bond employee was backing up in the forklift, he bumped into a pipe and the load fell, hitting Marshall and crushing his legs, which had to be amputated. ECF Dkt. #13 at 3; #18 at 11 (both citing ECF Dkt. #1-1 at 7 ¶27).

Marshall filed several workers' compensation claim administrative petitions against Motor Express, Russell Trucking, and the Pennsylvania Uninsured Employers Guaranty Fund ("UEGF"). ECF Dkt. #13 at 3; #18 at 11-12; #1-1 at 8 ¶29. The UEGF filed a petition to join Dura-Bond to the proceedings, which were consolidated into a single proceeding. ECF Dkt. #13 at 3; #18 at 12; #1-1 at 8 ¶29. Marshall also filed a lawsuit in state court asserting tort liability against Motor Express, Dura-Bond, Wallace, and Russell Trucking and others. ECF Dkt. #18 at 12 (citing ECF Dkt. #1-1 at 9 ¶¶34-36).

## B. Pennsylvania Workers Compensation Proceedings

The Administrative Law Judge ("ALJ") in the workers' compensation proceeding found Russell Trucking to be Marshall's immediate employer. However, unbeknownst to Motor Express, Russell Trucking did not have workers compensation insurance. ECF Dkt. #13 at 3; #18 at 12 (citing ECF Dkt. #1-1 at 8 ¶30; #4-2 at 18). The ALJ further found both Motor Express and Dura-Bond to be Marshall's "statutory employers," which finding the Pennsylvania Workers' Compensation Appeal Board affirmed. ECF Dkt. #13 at 3; #18 at 12-13; #1-1 at 8 ¶31; #4-3 at 28-29.

The instant Complaint states that neither Russell Trucking nor Motor Express carried workers compensation insurance in Pennsylvania, but Dura-Bond did. Thus, Dura-Bond, as required by law, has been paying for Marshall's workers compensation claim. ECF Dkt. #1-1 at 8 ¶32. Dura-Bond subsequently asserted a right of indemnity against Motor Express in a civil action in Pennsylvania for the workers compensation costs and expenses it paid to Marshall related to the accident. *Id.* at 9 ¶33. The status of this suit is unknown.

## C. Underlying Lawsuit: Pennsylvania Civil Action

Marshall also filed a civil action in Pennsylvania state court against Motor Express and certain related individuals and affiliates, Russell Trucking, Wallace, and Dura-Bond. Marshall sought compensatory and punitive damages for his injuries. The civil action was stayed pending the

Workers Compensation Proceeding. ECF Dkt. #18 at 14 (citing ECF Dkt. #1-1 at 9 ¶¶34-36). According to a joint status report filed on September 6, 2019, the parties settled the Underlying Lawsuit during a mediation. ECF Dkt. #23.

### D. RLI Policy

RLI is an Illinois for-profit insurance company that issues various insurance policies to entities around the United States and in Ohio. ECF Dkt. #1 at 1; #1-1 at 3 ¶8. RLI issued a policy ("RLI Policy"[2]) of commercial general liability insurance to Motor Express for the period from June 1, 2014 to June 1, 2015, under which Plaintiffs seek defense and indemnity for the Underlying Lawsuit. ECF Dkt. #13 at 5; #18 at 15. A copy of the RLI Policy was attached to RLI's Answer and Counterclaim, and therefore, constitute part of the pleadings. ECF Dkt. #13 at 5 (citing Fed. R. Civ. P 10(c)); ECF Dkt. #4-1; *see also* ECF Dkt. #1-1 (RLI Policy was also attached to the notice of removal). The parties dispute which individuals and entities are insured under the RLI Policy and the Court will address these arguments and specific facts more in depth later in this decision.

### E. Federal Case

On April 4, 2019, Plaintiffs filed a Complaint in the Court of Common Pleas in Trumbull County, Ohio, which contained seven counts against Defendants RLI and TrueNorth Companies, L.C. ("TrueNorth"). ECF Dkt. #1-1. The Complaint alleges the following counts: (1) declaratory judgment against RLI; (2) anticipatory breach of contract against RLI; (3) negligent misrepresentation against TrueNorth; (4) professional negligence/negligent procurement against TrueNorth; (5) breach of fiduciary duty against TrueNorth; (6) breach of contract against TrueNorth; and (7) unjust enrichment against TrueNorth. *Id.* By stipulation of the parties, Plaintiffs dismissed with prejudice their instant claims against Defendant TrueNorth after having settled, leaving RLI as the remaining defendant and Counts One and Two pending. ECF Dkt. #s 23, 28, 29.

On May 6, 2019, RLI removed the case from the Court of Common Pleas to the United States District Court for the Northern District of Ohio. ECF Dkt. #1. On that same day, RLI filed

---

[2]Plaintiffs refer to this policy as the "CGL Policy" in the Complaint and in their brief. *See* ECF Dkt. #1-1; #18.

an Answer and Counterclaim against all Plaintiffs. ECF Dkt. #4. On June 6, 2019, the parties consented to the exercise of jurisdiction by a United States Magistrate Judge. ECF Dkt. #9.

RLI filed the instant motion for judgment on the pleadings on July 8, 2019. ECF Dkt. #13. Plaintiffs filed a response brief in opposition to the motion on August 6, 2019. ECF Dkt. #18. On August 20, 2019, RLI filed a reply brief. ECF Dkt. #19. With permission from the Court, Plaintiffs filed a sur-reply on August 27, 2019, and RLI filed a response to Plaintiffs' sur-reply on September 10, 2019. ECF Dkt. #s 21, 27.

## II.    STANDARD OF REVIEW

Federal Civil Rule 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay the trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A court reviews a Rule 12(c) motion for judgment on the pleadings under the same standard as a motion to dismiss under Rule 12(b)(6). *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010); *Jackson v. Prof'l Radiology Inc.*, 864 F.3d 463, 465-66 (6th Cir. 2017); *Boulger v. Woods*, 917 F.3d 471, 478 (6th Cir. 2019).

Thus, "[f]or purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *McGlone v. Bell*, 681 F.3d 718, 728 (6th Cir. 2012) (quoting *JPMorgan Chase Bank, N.A., v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). Although a complaint need not contain "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, a complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (internal quotations omitted). "[A] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). A motion for judgment on the pleadings "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d

577, 582 (6th Cir. 2007) (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir.1991)).

## III.   LAW AND ANALYSIS

Defendant RLI attacks both Counts One and Two that remain pending against RLI, which is the only remaining Defendant in the instant case. RLI's defenses are also reiterated in its Counterclaim against Plaintiffs. Essentially, RLI argues that, based on the Workers Compensation adjudication, Plaintiffs are collaterally estopped from arguing that the underlying plaintiff, Marshall, was not an employee of Motor Express, and, consequently, due to his "employee" status, RLI argues that the Employee Exclusion of the RLI Policy precludes coverage. ECF Dkt. #4 at 9; #13 at 9, 11. RLI further contends that it has no duty to defend or indemnify Plaintiffs in the Underlying Lawsuit. ECF Dkt. #4 at 10; #13 at 15-16.

### B.   Employee Exclusion under RLI Policy
#### 1.   Collateral Estoppel

The parties agree that Ohio law governs the interpretation of the RLI Policy in the instant insurance claim, whereas Pennsylvania law governed the Workers Compensation adjudication and the Underlying Lawsuit. *See* ECF Dkt. #13 at 15 n.3; #18 at 18. However, RLI asserts that Pennsylvania law governs the "workers compensation issues," specifically Marshall's employment status. ECF Dkt. #13 at 15 n.3; #19. RLI relies heavily on Pennsylvania case law to conclude that, because the ALJ in the workers compensation proceeding determined that Motor Express was one of Marshall's "statutory employers," Marshall is therefore an "employee" of Motor Express under the RLI Policy, which excludes coverage for "bodily injur[ies]" to an insured's "employee." ECF Dkt. #13 at 9; *see* ECF Dkt. #4-1 at 10. Accordingly, RLI argues that the issue of Marshall's employment status relative to Motor Express is collaterally estopped from being re-litigated in the instant suit. ECF Dkt. #13 at 9-14; #19.

Plaintiffs respond that the elements of collateral estoppel are not met. ECF Dkt. #21. Specifically, Plaintiffs allege that the RLI Policy and its defined terms were not at issue, nor were they actually litigated or determined, and that RLI was not a party or otherwise involved in the workers compensation proceeding. *Id.* at 1-6. Plaintiffs also contend that the factual findings from

the workers compensation proceeding do not establish Marshall's employment status as a matter of law and that RLI's arguments are premature and improper for a motion for judgment on the pleadings. *Id.* at 2, 6-9.

Generally, when determining whether a state court judgment has any preclusive effect upon a subsequent action brought in federal court, "the Full Faith and Credit Act, 28 U.S.C. § 1738, requires the federal court to give the prior adjudication the same preclusive effect it would have under the law of the state whose court issued the judgment," unless a statutory exception exists. *Heyliger v. State Univ. and Cmty. Coll. Sys. of Tennessee,* 126 F.3d 849, 851 -852 (6th Cir. 1997) (citing *Migra v. Warren City School Dist.,* 465 U.S. 75, 81 (1984) and *Allen v. McCurry,* 449 U.S. 90, 96 (1980)). The statute encompasses the doctrines of collateral estoppel, or issue preclusion, and *res judicata*, or claim preclusion. *San Remo Hotel, L.P. v. City and Cty. of San Francisco, Cal.*, 545 U.S. 323, 336 (2005) (citing *Allen v. McCurry*, 449 U.S. 90, 94-96 (1980)). When a federal court is asked to give preclusive effect to a state court judgment, the federal court must apply the law of the state in which the prior judgment was rendered in determining whether and to what extent the prior judgment should be given preclusive effect in a federal action. 28 U.S.C. § 1738; *Migra,* 465 U.S. at 81*; Bay Area Factors v. Calvert (In re Calvert),* 105 F.3d 315, 317 (6th Cir. 1997). This rule also applies when the earlier judgment was a final determination of an administrative body acting in a "judicial capacity." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107, 111 S. Ct. 2166, 2169, 115 L. Ed. 2d 96 (1991) (citing *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966)). In this case, Pennsylvania law applies as it was the Pennsylvania Workers Compensation proceeding that rendered the final judgment for which RLI in the instant case seeks preclusive effect.

The Supreme Court of Pennsylvania recently described the doctrine of collateral estoppel as "preclud[ing] relitigation of an issue settled in a previous action" if the following elements are met:

> (1) the issue decided in the prior case is identical to the one presented in the later action;
>
> (2) there was a final adjudication on the merits;

8

(3) the party against whom the plea [collateral estoppel] is asserted was a party or in privity with a party in the prior case;

(4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and

(5) the determination in the prior proceeding was essential to the judgment.

*Skotnicki v. Ins. Dep't*, 644 Pa. 215, 229, 175 A.3d 239, 247 (2017) (citing *Office of Disciplinary Counsel v. Kiesewetter*, 585 Pa. 477, 889 A.2d 47, 50–51 (2005)); *see also In re Estate of Plance*, 644 Pa. 232, 267-68 (2017). Regarding the issue of Marshall's employment status, Plaintiffs argue that elements one, three, and four above are not met. ECF Dkt. #21. Accordingly, the Court will focus its discussion on those elements.

Elements three and four of collateral estoppel are met. "There is no requirement under the doctrine of collateral estoppel that the party raising the defense [RLI] be involved in the original action, but only that the party against whom it is being raised [Plaintiffs] was a party in the initial proceedings." *See Shiffer v. Liberty Mut. Fire Ins. Co.*, No. 3:17-CV-978, 2019 WL 3297513, at *7 n.7 (M.D. Pa. July 22, 2019) (citing *Incollingo v. Maurer*, 394 Pa.Super. 352, 357-58, 575 A.2d 939, 941 (Pa. Super. Ct. 1990)). In addition, when there is no conflict of interest, an insurer is generally in privity with its insured for purposes of collateral estoppel. *Consol. Rail Corp. v. Hartford Acc. & Indem. Co.*, 676 F. Supp. 82, 85-86 (E.D. Pa. 1987); *see Catroppa v. Carlton*, 998 A.2d 643, 646 (Pa. Super. Ct. 2010) (citing *Dally v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co.*, 374 Pa. 476, 97 A.2d 795, 796 (1953)). Privity requires "such an identification of interest of one person with another as to represent the same legal right." *Catroppa*, 998 A.2d at 646 (citing *Ammon v. McCloskey*, 440 Pa.Super. 251, 655 A.2d 549, 554 (1995)). Plaintiffs only contend that RLI was not involved in the workers compensation proceeding, but it is not required under the doctrine of collateral estoppel. Even if it were required, RLI, as the insurer without an apparent conflict of interest, would have been in privity with the insured in the prior proceeding. With regard to element four, Plaintiffs had a full and fair opportunity to litigate Marshall's employment status in the workers compensation proceeding. In fact, Marshall's employment status was a central issue to the workers' compensation proceeding in order to establish the hierarchy of which parties would be liable for payment. *See* ECF Dkt. #4-2; #4-3.

Regarding the first element of collateral estoppel, Plaintiffs assert that the issues are not identical. ECF Dkt. #21. Plaintiffs claim that Marshall qualifies as a "temporary worker" under the RLI Policy, which, if true, would make the Employer's Liability Exclusion inapplicable. ECF Dkt. #18 at 20-27; #21. The Employer's Liability Exclusion provision that RLI relies on, Section I(A)(2)(e) of the RLI Policy, states the following:

> This insurance does not apply to:
>
> ...
>
> "Bodily injury" to:
>
> **(1)** An "employee" of the insured arising out of and in the course of:
>
> > **(a)** Employment by the insured; or
> >
> > **(b)** Performing duties related to the conduct of the insured's business
>
> ...
>
> This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.
>
> This exclusion does not apply to liability assumed by the insured under an "insured contract".

ECF Dkt. #4-1 at 10-11. Section V of the RLI Policy includes the following relevant definitions:

> **3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
>
> **5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".
>
> **10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".
>
> **19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

ECF Dkt. #4-1 at 22-23, 25.

Plaintiffs further contend that even if Pennsylvania workers compensation law is considered in the interpretation of the RLI Policy, RLI's argument should still be rejected. ECF Dkt. #18 at 22. Specifically, Plaintiffs state that, as RLI "admitted" in its motion, a "statutory employer" under

Pennsylvania law is not an actual employer or a common law employer. *Id.* (citing *Peck v. Delaware Cty. Bd. of Prisoner Inspectors*, 572 Pa. 249, 253, 814 A.2d 185, 187-88 (Pa. 2002) ("A statutory employer is a master who is not a contractual or common-law one, but is made one by the Act)); *see* ECF Dkt. #13 at 9. However, a statutory employer stands in the same position as a direct employer, and may claim the defense of workers' compensation immunity. ECF Dkt. #13 at 10 (citing *Peck*, 572 Pa. at 254–55 ("Section 203, by placing the statutory employer in the same position as the 'contractual' or 'common law' employer of the injured worker for tort liability purposes, entitles the statutory employer to the same immunity from suit that would be enjoyed by the 'contractual' or 'common law' employer.")). Moreover, both parties agree that the purpose of the Pennsylvania statutory employment doctrine is to "ensure the payment of workers' compensation benefits by a financially-responsible party in the injured worker's chain of employment if the direct employer fails to do so." ECF Dkt. #13 at 10; #18 at 22 (both citing *Peck*, 572 Pa. at 254). The statutory employer is secondarily liable for workers' compensation benefits to the injured worker if the subcontractor who is primarily liable has failed to secure benefits. ECF Dkt. #13 at 10 (citing *Dougherty v. Conduit & Found. Corp.*, 449 Pa. Super. 405, 411, 674 A.2d 262, 265 (1996)).

For support, RLI relies heavily on *Frederick Mut. Ins. Co. v. Ahatov*, 274 F. Supp. 3d 273 (E.D. Pa. 2017). Ahatov, who was retained and employed by subcontractor Tull, filed a petition for workers compensation benefits, asserting that general contractor Concept was his employer[3]. *Id.* at 277. Concept was found to be Ahatov's "statutory employer" and was required to pay worker's compensation benefits if Tull did not. *Id.* at 277-278. Concept then sought coverage from its general liability insurer, Frederick, who argued that its policy exclusion for injuries to the insured's employee precluded coverage. *See id.* at 278-79, 282.

The *Ahatov* court first interpreted the insurance policy at issue under Pennsylvania law, which is similar to Ohio law in that insurance contracts are interpreted under the plain meaning of the stated terms, unless an ambiguity exists, in which case the ambiguous term is construed to favor

---

[3]Compare Ahatov to Marshall, Tull to Russell Trucking, Concept to Motor Express, and insurer Frederick to RLI.

the insured. *Frederick Mut. Ins. Co. v. Ahatov*, 274 F. Supp. 3d 273, 278, 283 (E.D. Pa. 2017) (explaining Pennsylvania law regarding insurance contract interpretation); *see, e.g.*, *Rhoades v. Equitable Life Assur. Soc. of U.S.*, 374 N.E.2d 643, 644 (Ohio 1978) ("It is well-settled in Ohio that insurance policies should be enforced in accordance with their terms as are other written contracts."); *Universal Underwriters Ins. Co. v. Shuff*, 423 N.E.2d 417, 418 (Ohio 1981) (same); *Hybud Equip. Corp. v. Sphere Drake Ins. Co.*, 597 N.E.2d 1096, 1102 (Ohio 1992) (stating that courts may not rewrite a contract "when the intent of the parties is evident, *i.e.*, if the language of the policy's provisions is clear and unambiguous . . . ."); *Gomolka v. State Auto. Mut. Ins. Co.*, 436 N.E.2d 1347, 1351 (Ohio 1982) ("The intention of the parties must be derived instead from the instrument as a whole, and not from detached or isolated parts thereof."); *Wohl v. Swinney*, 888 N.E.2d 1062, 1066 (Ohio 2008) ("When interpreting a contract, we will presume that words are used for a specific purpose and will avoid interpretations that render portions meaningless or unnecessary."); *Blue Cross & Blue Shield Mut. of Ohio v. Hrenko*, 647 N.E.2d 1358, 1360 (Ohio 1995) ("It is well-settled law in Ohio that insurance policies should be construed liberally in favor of the insured."); *see also Money Station, Inc. v. Elec. Payment Serv., Inc.*, 735 N.E.2d 966, 970 (1999) ("When a court finds a ambiguity in a contract, the court may look to extrinsic, or parol, evidence to determine the parties' intent."); Lincoln Elec. Co. v. St. Paul Fire & Marine Ins. Co., 210 F.3d 672, 685 (6th Cir. 2000) (If "an ambiguity in the contract [exists], that ambiguity must be construed against the drafting party.").

The *Ahatov* court agreed with insurer Frederick, stating the following:

> Frederick has accepted that it has the burden to prove the applicability of the relevant exclusions. We conclude that it has met this burden and has provided persuasive case law to support its position. The plain meaning of exclusion 11 precludes coverage for bodily injuries suffered by employees in the course of their employment by the insured. It is undisputed that the "insured" in this context is Concept. While Ahatov was reportedly employed by Tull, the subcontractor, his entitlement to benefits, unfulfilled by Tull's failure to secure workers' compensation insurance, kicks up to Concept as the general contractor. Further, *Ahatov is the "employee" of Concept given his judicial admission in the Workers' Compensation Claim Petition and the Workers' Compensation Judge's ruling that he was Concept's statutory employee*. Thus, under this exclusion, coverage is barred as Ahatov (the employee) was injured in the course of employment with the insured (Concept).

*Id.* at 283-84 (internal citations omitted) (emphasis added). Importantly, the court also noted that "[a]djudications by worker's compensation judges in Pennsylvania are afforded collateral estoppel/res judicata effect, barring re-litigation of the issues decided in the worker's compensation forum by those same parties in a later civil action." *Id.* at 283 n.7 (citing *Grant v. GAF Corp.*, 415 Pa. Super. 137, 151-52, 608 A.2d 1047, 1055 (Pa. Super. Ct. 1992), *aff'd sub nom. Gasperin v. GAF Corp.*, 536 Pa. 429, 639 A.2d 1170 (1994)).

Although Marshall's employment status for workers' compensation purposes was litigated in a prior suit, the particular issue of whether Marshall qualifies as a "temporary worker" under the RLI Policy was not actually litigated. *Frederick Mut. Ins. Co. v. Ahatov*, 274 F. Supp. 3d 273 (E.D. Pa. 2017) appears to be directly on point: the policy exclusion in that case extended to bodily injury to an "employee," Ahatov, of the "insured," Concept, if it occurred in the course of employment by the "insured." *See id.* at 280-81. However, "employee" was never defined in the opinion, and the court found that Ahatov was "the 'employee' of Concept given his judicial admission in the Workers' Compensation Claim Petition and the Workers' Compensation Judge's ruling that he was Concept's statutory employee." *Id.* at 283.

Like the *Ahatov* court, this court must first look to the plain meaning of the stated contract terms in the RLI Policy in light of Ohio's rules of contract interpretation. Here, the Employers' Liability Exclusion similarly applies to bodily injuries to an "employee," but this term is narrowly defined to include only a "leased worker" and excludes a "temporary worker," a distinction absent from the *Ahatov* opinion. *See* ECF Dkt. #4-1 at 22. Another important distinction between these cases is that *Ahatov* was decided on summary judgment, whereas the instant motion is for judgment on the pleadings. This court's review is more limited because Plaintiffs' pleadings must be construed as true. *McGlone v. Bell*, 681 F.3d 718, 728 (6th Cir. 2012) (quoting *JPMorgan Chase Bank, N.A., v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). Also, Plaintiffs' well-pleaded allegations, taken as true, will survive the instant motion if it states "a claim to relief that is *plausible* on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (internal quotations omitted) (emphasis added). In addition, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint also may be taken into account." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th

Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir.2001) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir.1997))) (internal brackets omitted).

For review, "temporary worker" is defined in the RLI Policy as "a person who is furnished to you to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions." ECF Dkt. #4-1 at 25. Plaintiffs do not argue that Marshall was hired as a substitute for another permanent employee and they expressly state that they do not argue that he was a seasonal employee. ECF Dkt. #21 at 8. Rather, Plaintiffs argue that Marshall was hired to fulfill "short-term work conditions," a term, Plaintiffs contend, is undefined in the RLI Policy and has been held to have a wide variety of applications. ECF Dkt. #18 at 26 (citing *Central Mut. Ins. Co. v. True Plastics, Inc.*, 992 N.E.2d 385, 390 (Mass.App.Ct. 2013) ("A short-term working condition need not necessarily be of finite duration."); *Bituminous Cas. Corp. v. Mike Ross, Inc.*, 413 F.Supp.2d 740, 745 (N.D.W.Va. 2006) ("short-term workload conditions" is ambiguous: "Does this phrase mean a worker can work only one hour to be considered 'temporary?' Five hours? Ten hours? One day? Ten days? Four months? Six months? One year? This question is impossible to answer based on the language in the policy.")). Although neither party mentioned this aspect of the definition, "furnished to" is also an important element of the definition. In an unpublished opinion, the Sixth Circuit ruled on an CGL policy's employer's exclusion with identical wording and terms. *See Gen. Agents Ins. Co. of Am. v. Mandrill Corp.*, 243 Fed.Appx. 961 (6th Cir. 2007). The court focused on the earlier portion of the definition of "temporary worker," stating that the phrase "furnished to" necessarily requires the involvement of a third party, "such as a temporary staffing agency, that supplies the worker to the insured employer." *Id.* at 967-68. Plaintiffs' contend that Marshall was "furnished" by Russell Trucking to Motor Express, whereas RLI argues that, by sending in a job application himself, Marshall was not "furnished" by any party at all. *See* ECF Dkt. #18 at 26; #19 at 10.

Furthermore, Plaintiffs' Complaint alleges that "Motor Express' business model . . . follows an 'employee leasing' arrangement under which it does not own any trucks or employ any individuals." ECF Dkt. #1-1 at 5 ¶17. Plaintiffs also allege that trucks operating under Motor Express' operating authority are driven by three types of drivers: independent contractors, employees of fleet owners, and employees of professional-employer organizations. *Id.* at 6 ¶18.

Plaintiffs' Complaint never mentions Mr. Wallace or Wallace Trucking. However, in their merits brief, Plaintiffs refer to attached affidavits of Joseph Kerola and Robert Wallace, in which they testified that Wallace Trucking was the main provider of truck drivers to Motor Express and when Wallace Trucking could not meet demand, then Wallace would call a third party, like Russell Trucking, to furnish more temporary drivers, like Marshall, to Motor Express for a particular day. ECF Dkt. #18 at 14; #18-1; #18-2; *see also* ECF Dkt. #4-2 at 14 (summarizing testimony that because trucks were essential for the plant's continued operation, Wallace eventually connected with Mr. Russell and Russell Trucking). This seems to contradict the Complaint, which states that Motor Express had a long-standing independent contracting arrangement with Russell Trucking. ECF Dkt. #1-1 at 6 ¶22; *but see* ECF Dkt. #4-2 at 23 (ALJ finding that Marshall "was not an independent contractor under any test"). The Complaint describes Marshall's status as that of an independent contractor, but it makes no mention of facts supporting a "short-term workload" position. ECF Dkt. #1-1 at 7 ¶24. Rather, Plaintiffs' brief, referring to the ALJ's opinion, mentions that Marshall admitted that Russell Trucking did not require him to work every day. ECF Dkt. #4-2 at 17; *see also id.* at 13. According to the ALJ's decision, Marshall needed to call in each evening to determine whether he was going to have work the following day. *Id.* at 6. Marshall claimed that he "was hired as a full-time employee but they only [had] work for [him] roughly three or four times per week." *Id.* at 17. The record also demonstrates that Marshall was employed in his truck driver position for only a brief period of time; it appears that Marshall was hired approximately 1 month before his accident. *See* ECF Dkt. #1-1 at 7 ¶¶25, 27; #4-2 at 6, 16-17. The ALJ also made the following finding:

> [Motor Express], notably, could not undertake its business purpose without Mr. Marshall's labor and, by admission of Mr. Kerola, [Motor Express] could not complete its contract with Dura-Bond without Mr. Marshall's labor. Indeed, the labor of a truck driver was and is integral to the operation of a motor carrier allowing its agents to operate trucks. The driving of trucks, in any event, was a regular and recurrent aspect of [Motor Express'] business.

*Id.* at 19.

Taking Plaintiffs' allegations in the pleadings and record as true lead the court to DENY RLI's motion for judgment on the pleadings. Most of the elements of collateral estoppel were met,

except for the first element regarding whether the issues are identical. Although *Frederick Mut. Ins. Co. v. Ahatov*, 274 F. Supp. 3d 273 (E.D. Pa. 2017) closely resembles this case, this Court finds that a subissue absent from *Ahatov* distinguishes the instant case. Plaintiff has provided plausible facts, taken as true, that Marshall could be considered a "temporary employee" under the RLI Policy, so that the Employer's Liability Exclusion would not apply; that is all that is required to deny RLI's motion for judgment on the pleadings. This Court does not rule one way or the other on the issue of whether Marshall actually meets the definition of "temporary employee" at this early stage of the proceedings.

**B.** **"Insureds" Under RLI Policy**

RLI contends that Elite, JWK, Pamela Kerola, and Joseph Kerola (to some extent) are not "Insureds" under RLI's Policy. ECF Dkt. #13 at 8-9. However, the parties agree that the RLI Policy explicitly states that Motor Express is a Named Insured. *See* ECF Dkt. #4-1 at 5, 56; #13 at 8-9; #18 at 15. In relevant part, the RLI Policy defines "Insureds" as follows:

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

> **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.
>
> **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.
>
> **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.
>
> **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

. . .

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

16

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; . . .

ECF Dkt. #4-1 at 17-18. To note, the Declarations appear to refer exclusively to Motor Express, with no mention of the Kerolas, Elite, JWK, or Joker LLC. *See* ECF Dkt. #4-1 at 5-7.

As previously noted, Ohio law applies to the instant insurance claim and interpretation of the RLI Policy. Ohio law mandates that insurance policies are to be enforced in accordance with their stated contract terms. *Smith v. Erie Ins. Co.*, 148 Ohio St.3d 192, 197 (2016) (noting that "[a]n insurance policy is a contract; in interpreting contracts, courts must give effect to the intent of the parties, and that intent is presumed to be reflected in the plain and ordinary meaning of the contract language.") (internal citation omitted); *Rhoades v. Equitable Life Assur. Soc. of U.S.*, 54 Ohio St.2d 45, 47 (1978). Courts may not re-write an insurance Policy "when the intent of the parties is evident, *i.e.*, if the language of the policy's provisions is clear and unambiguous[.]" *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 665 (1992). The Policy must be read as a whole and in a way that gives meaning to each term. Policy provisions must be construed in the context of the entire Policy, with any isolated words or phrases interpreted in light of the rest of the contract. *Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St.2d 166, 172-73 (1982) ("The intention of the parties must be derived instead from the instrument as a whole, and not from detached or isolated parts thereof."). Further, "[w]hen interpreting a contract, [the court] will presume that words are used for a specific purpose and will avoid interpretations that render portions meaningless or unnecessary." *Wohl v. Swinney*, 118 Ohio St.3d 277, 280 (2008) (citations omitted).

"Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *Lane v. Grange Mut. Cos.*, 45 Ohio St.3d 63, 65 (1989) (citations omitted); *see Blue Cross & Blue Shield Mut. of Ohio v. Hrenko*, 72 Ohio St.3d 120, 122 (1995) ("It is well-settled law in Ohio that insurance policies should be construed liberally in favor of the insured."); *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 211 (1988); *Moorman v. Prudential Ins. Co. of Am.*, 4 Ohio St.3d 20,

22 (1983) (noting that, if there is any doubt, uncertainty, or ambiguity about the coverage, "this court must adopt the construction most favorable to the insured which would allow recovery"). In addition, "[t]he insurer, being the one who selects the language in the contract, must be specific in its use; an exclusion from liability must be clear and exact in order to be given effect. *Lane v. Grange Mut. Cos*., 45 Ohio St.3d 63, 65 (1989) (citing *Am. Fin. Corp. v. Fireman's Fund Ins. Co.*, 15 Ohio St.2d 171, 173 (1968)); *cf. Scott Fetzer Co. v. Zurich Am. Ins. Co.*, 769 Fed.Appx. 322, 329 (6th Cir. 2019) ("Under Ohio law, a party seeking to interpret a clause in an insurance Policy so as to deny insurance coverage must show its interpretation of the contract is the only fair one.") (unpublished); *Andersen v. Highland House Co.*, 93 Ohio St.3d 547, 550 (2001) ("[I]t will not suffice for [the insurer] to demonstrate that its interpretation is more reasonable than the Policyholder's.") (citation omitted).

Plaintiffs allege in the Complaint that "Plaintiff Joseph Kerola, Sr., is an insured under the [RLI] Policy as an executive officer of Motor Express, the named insured." ECF Dkt. #1-1 at 10 ¶38. RLI concedes that "Mr. Kerola may be an 'insured' as an officer of Motor Express, but only with respect to his duties as such." ECF Dkt. #13 at 9. However, RLI insists that Mr. Kerola is not an insured as an officer of Elite or JWK because those companies, RLI argues, are not insureds. *Id.*

Plaintiffs further allege in the Complaint that "Plaintiff Pamela Kerola is an insured under the [RLI] Policy as the spouse of the sole member (Joseph Kerola, Sr.) of the limited-liability company (Joker, LLC) that is the sole shareholder and owner of Motor Express, the named insured." ECF Dkt. #1-1 at 10 ¶39. Importantly and with respect to all the disputed "insureds," Plaintiffs made the following allegations in their Complaint:

> 40. RLI Insurance through its representative David Dunn specifically represented to Plaintiffs on multiple occasions over the last twelve (12) years–both before the applicable policies were selected and after they went into effect–that all of Plaintiffs' companies were properly insured, which would have included Elite and JWK. David Dunn made these representations at various meetings, including but not limited to meetings on Jan. 19, 2010, February 4, 2010, February 28, 2010, February 9, 2011, March 10, 2011, March 26, 2011, April 25, 2012, October 8, 2012, and May 28, 2014 and August 7, 2018.

> 41. Upon notice that JWK, Elite, and the Kerolas had not been specifically identified as "additional insureds" on the [RLI] Policy, RLI Insurance added them as additional insured to the then-current [RLI Policy] without charging any additional premium.

> 42. Plaintiffs intended, and upon information and belief RLI Insurance intended, that JWK, Elite, and the Kerolas be insureds under the [RLI] Policy.

ECF Dkt. #1-1 at 10 ¶¶40-42. In its Answer, RLI denied the above allegations, except it admitted that RLI added JWK, Elite, and the Kerolas as additional insureds to a subsequent September 1, 2016 to September 1, 2017 CGL policy without charging an additional premium. ECF Dkt. #4 at 5 ¶¶40-42.

RLI is correct that the face of the RLI Policy does not appear to include Pamela Kerola, Elite, JWK, or Joseph Kerola in his capacity as an officer of Elite or JWK. Regarding Pamela Kerola, Plaintiffs contend Pamela Kerola is an insured due to her status as a spouse of Joseph Kerola, who in turn is the sole member of Joker LLC. Joker LLC is the sole shareholder and owner of Motor Express, the named insured. ECF Dkt. #1-1 at 10 ¶39; #18 at 15. However, Joker LLC is not "designated in the Declarations," making Section II(1)(c) inapplicable. Subsection (d) is also not applicable because Joker LLC is a limited liability company, which is excluded from that particular section. Even if either subsection (c) or (d) were applicable, they are unhelpful to Plaintiffs because neither section adds, or even mentions, spouses as being additional insureds. ECF Dkt. #4-1 at 17-18. To compare, the neighboring subsections (a) and (b) do contemplate the spouses as additional insureds, but are also not applicable. *Id.* Subsection (a) concerns an individual who is "designated in the Declarations," and, as mentioned previously, the Declarations only appear to specifically reference Motor Express. Subsection (b) concerns a partnership or joint venture, which is inapplicable to Joker LLC, Motor Express, and also even an individual. ECF Dkt. #4-1 at 5-7, 17-18.

It also appears that Elite, JWK, and Joseph Kerola in his capacity as an officer of Elite and JWK are also not covered on the face of the agreement. This is again because neither of these affiliate organizations is "designated in the Declarations" to qualify under Section II(1) of the RLI Policy. *See* ECF Dkt. #4-1 at 17-18. Further, Section II(3) is relevant to this inquiry as well because Elite and JWK are corporate organizations. *See* ECF Dkt. #4-1 at 18. However, RLI correctly points out that Plaintiffs did not allege in the Complaint that Elite or JWK were newly acquired or formed corporations over which Motor Express maintains ownership or majority interest, nor were they

alleged to have been acquired or formed in the 90 days pre-dating the subject accident. ECF Dkt. #13 at 8.

Even Plaintiffs' own Complaint appears somewhat contradictory regarding insured status, especially with regard to Pamela Kerola. First, Plaintiffs allege Pamela Kerola is an insured under the RLI Policy. ECF Dkt. #1-1 at 10 ¶39. Subsequently, Plaintiffs state that JWK, Elite, and both Pamela and Joseph Kerola were not specifically identified as "additional insureds," but were *intended* to be insureds. *Id.* at 10 ¶¶40-42. Instead of arguing how the disputed parties qualify under the plain language of the agreement, Plaintiffs, in their merits brief, contend that these parties are all insured under the RLI Policy because that it was what Plaintiffs intended and what they allege RLI represented. ECF Dkt. #18 at 27. Thus, the plain language of the RLI Policy is not ambiguous and would favor RLI's interpretation that the disputed parties are not covered. However, the intent of the parties is in dispute.

The Court also notes that neither party mentioned a merger clause or its effect, if any. A merger clause appears to be present in the policy, but its language allows for changes in the terms of the policy with RLI's consent, but does not clearly specify whether the consent need be in writing or not. *See* ECF Dkt. #4-2 at 45 (Section B, entitled "Changes"). Although there is no briefing on this issue, this language does not appear on its face to rule out the possibility of Plaintiffs' contention that the policy was amended or so intended to include additional insureds, which is one of the main issues in the instant motion.

Plaintiffs propose that reformation would be a proper remedy due to a mutual or unilateral mistake. ECF Dkt. #18 at 27 (citing *Ohio Farmers Ins. Co. v. Clinton Cty. Nat. Bank & Tr. Co.*, 220 N.E.2d 381, 385-86 (Com. Pl. 1964)); *see also Shear v. W. Am. Ins. Co.*, 11 Ohio St. 3d 162, 164, 464 N.E.2d 545, 547 (Ohio 1984) ("[T]o grant reformation of [insurance] policy so as to include Shear as a named or designated insured on the grounds of mutual mistake, Shear had the burden of showing by clear and convincing evidence that a mutual mistake was made."). Plaintiffs further acknowledge that although they did not assert a specific claim for reformation in their original Complaint, they alleged facts supporting such a claim and intend to seek discovery on this issue. *Id.* at 28. Accordingly, Plaintiffs requested to formally amend their Complaint to set forth a reformation

claim if the Court were to determine it necessary despite the alleged facts supporting such a claim. *Id.* Alternatively, Plaintiffs move the Court to convert RLI's motion into one for summary judgment to allow time for discovery. *Id.* at 28-30.

A federal court "should freely give leave to amend when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"). Without any sign of bad faith or prejudice at this early stage of the proceedings and because Plaintiffs' alleged sufficient facts to support a reformation claim to put RLI on notice, the Court GRANTS Plaintiffs' motion to amend and DENIES their alternative request to convert the instant motion into one for summary judgment.

### C.      Duty to Defend and Indemnify

Finally, RLI asserts that it does not have a duty to defend. ECF Dkt. #13 at 15-16. In the Underlying Lawsuit, RLI agreed to defend Plaintiffs under a reservation of rights, but maintained that there is no coverage for any judgment or settlement. ECF Dkt. #1-1 at 11 ¶¶50-51; #13 at 2; #18 at 15. At this point, the duty to defend issue is MOOT because the Underlying Lawsuit has been settled. ECF Dkt. #23. The ultimate issue, whether RLI must indemnify Plaintiffs, is premature and inappropriate for a motion for a judgment on the pleadings, but may be appropriate by RLI after discovery.

## IV.      CONCLUSION

For the foregoing reasons, the Court DENIES RLI's motion for judgment on the pleadings (ECF Dkt. #13), GRANTS Plaintiffs' motion to amend to add a reformation claim, and DENIES

Plaintiffs' alternative request to convert the instant motion into one for summary judgment (ECF Dkt. #18).

IT IS SO ORDERED.

DATE: December 27, 2019                    _/s/ George J. Limbert_
                                            GEORGE J. LIMBERT
                                            UNITED STATES MAGISTRATE JUDGE